# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| ACHTE/NEUNTE BOLL KINO BETEILIGUNGS GMBH & CO KG<br>Wormserstrasse 173<br>D-55130 Mainz, Germany<br><br>　　　　Plaintiff,<br><br>v.<br><br>DOES 1 – 2,094<br><br>　　　　Defendants. | No. 1:10-cv-453-RMC |

## AFFIDAVIT OF CRAIG GOLDBERG IN SUPPORT OF TIME WARNER CABLE INC.'S MOTION TO QUASH OR MODIFY SUBPOENA

1. My name is Craig Goldberg. I am employed by Time Warner Cable Inc. ("TWC") as Assistant Chief Counsel, Litigation and Chief Privacy Officer. I make this declaration in support of Time Warner Cable Inc.'s Motion to Quash or Modify Subpoena. In my role, I am knowledgeable about TWC's resources and capabilities for responding to subpoenas. The facts in this affidavit are based on my personal knowledge and the books and records of Time Warner Cable.

2. TWC is, among other things, an Internet Service Provider that provides services under the name "Road Runner."

3. TWC has created a subpoena compliance team within its law department. TWC's subpoena compliance team focuses exclusively on responding to legal process issued to TWC, such as subpoenas, warrants, court orders, and National Security Letters. The team comprises four full-time employees.

4. When a party seeks identifying information about a TWC subscriber through judicial process, in most instances the party provides TWC with an Internet Protocol ("IP") address, along with the date and time that the IP address was used. Using that information, TWC can look up identifying information corresponding to the IP address.

5. Looking up identifying information of a TWC subscriber based on an IP address is a multi-step process. It requires both centralized efforts at TWC's corporate offices, as well as efforts at the local operations center where the relevant subscriber is located. This process is time consuming and requires the work of multiple people at multiple locations.

6. Prior to the recent litigation filed by the law firm Dunlap Grubb & Weaver, TWC's subpoena compliance team received an average of 567 IP address lookup requests per month. Virtually all of these requests came from law enforcement. Some are emergency requests under 18 U.S.C. § 2702(c), in which death or serious physical injury are at issue. Examples of these requests include suicide threats, child abduction cases and terrorist activity. Such cases take immediate priority. Many other requests also involve serious crimes, such as child endangerment, threats to public officials, money laundering, and identity theft. In order to accommodate law enforcement requests, TWC has recently needed to retain a full-time temporary worker to aid its permanent team.

7. If TWC was ordered to comply with the recent subpoenas that Dunlap Grubb and Weaver served on TWC, including the subpoena in this case, in the time periods specified by the subpoenas, it would overwhelm the capacities of TWC's subpoena compliance team. If TWC gave the Dunlap subpoenas top priority and put all law enforcement activities on hold in order to respond to current subpoenas served by Dunlap Grubb & Weaver, it would take TWC nearly three months of full time work, and TWC would not be able to

respond to any other requests, emergency or otherwise, from law enforcement during this period. TWC has a six-month retention period for its IP look up logs. By the time TWC could turn to the law enforcement requests, many of these requests could not be answered. This is a zero sum process. Any time spent working on Dunlap subpoenas will cause a corresponding delay in responding to law enforcement subpoenas. It is TWC's hope that burdening its subpoena team with 5% more IP look up requests and the corresponding 5% delay in law enforcement responses will not cause undue hardship to law enforcement investigations. Sticking to the 5% limit to which Dunlap and TWC agreed would limit IP lookups in all of the Dunlap cases to 28 requests per month.

8. TWC has performed an internal cost study to assess the costs that TWC incurs in looking up identifying information about a subscriber. The cost study establishes that TWC's cost of looking up identifying information from one IP address is approximately $45. TWC incurs this cost on the basis of each IP address that it looks up, regardless of whether the IP address correlates to a subscriber previously identified.

9. TWC would suffer significant harms by responding to the subpoena served in this case because TWC would incur significant costs and because the subpoena would completely absorb the resources of TWC's subpoena compliance team for many months. The burdensome effects on TWC's compliance team are magnified by the multiple subpoenas that Dunlap Grubb and Weaver served in multiple cases and the ones that it will undoubtedly serve in the future.

10. In order to limit the burdens on TWC, I contacted plaintiff's counsel to negotiate an agreement to limit discovery from TWC. An accurate copy of our email exchange is attached at Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Date: May 10, 2010

_____
Craig Goldberg

SUBSCRIBED AND SWORN TO before me this 10th day of May, 2010.

_____
Notary Public

My Commission expires: _____

RIINA TOHVERT
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TO6204236
Qualified in New York County
My Commission Expires April 13, 2013

4