# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| ACHTE/NEUNTE BOLL KINO ) <br> BETEILIGUNGS GMBH & CO KG ) <br> Wormserstrasse 173 ) <br> D-55130 Mainz, Germany ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DOES 1 – 4,577 ) <br> ) <br> Defendants. ) | No. 1:10-cv-00453-RMC |

**THIRD PARTY TIME WARNER CABLE INC.'S REPLY IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA**

**TABLE OF CONTENTS**

**INTRODUCTION**............................................................................................................................1

**ARGUMENT**...................................................................................................................................2

**I.  PLAINTIFF'S OPPOSITION FAILS TO CONTRADICT THE EXISTENCE OF AN AGREEMENT TO LIMIT DISCOVERY OF TWC**.................2

**II. PLAINTIFF HAS NO PERSUASIVE RESPONSE TO TWC'S UNCONTROVERTED EVIDENCE THAT COMPLIANCE WITH PLAINTIFF'S SUBPOENA WILL IMPOSE SIGNIFICANT BURDENS ON TWC**........................................................................................................................3

    A.    Plaintiff's Unsupported Allegations Regarding TWC's Intentions Are False................................................................................................................3

    B.    The Court Should Quash the Subpoena Because Plaintiff Has Not Rebutted TWC's Evidence That Compliance Will Impose a Substantial Burden ...................................................................................5

**III. IF THE COURT DECLINES TO QUASH THE SUBPOENA, IT SHOULD IMPLEMENT LIMITATIONS THAT PROTECT TWC, INCLUDING REIMBURSEMENT OF COSTS**..................................................................7

**CONCLUSION** ................................................................................................................................9

## TABLE OF AUTHORITIES

### CASES

*In re Automobile Refinishing Paint Antitrust Litigation*,
    229 F.R.D. 482 (E.D. Pa. 2005) ................................................................................7

*Celanese Corp. v. E. I. du Pont de Nemours & Co.*,
    58 F.R.D. 606 (D. Del. 1973) ...................................................................................7

*Linder v. Calero-Portcarrero*,
    180 F.R.D. 168 (D.D.C. 1998) ............................................................................6, 8

*Linder v. Calero-Portocarrero*,
    251 F.3d 178 (D.C. Cir. 2001) ..................................................................................7

*In re Midlantic Corp. Shareholder Litigation*,
    Misc. No. 92-99, 1994 WL 750664 (D.D.C. Oct. 24, 1994) ....................................7

*United States v. Columbia Broadcasting System, Inc.*,
    666 F.2d 364 (9th Cir. 1976) ....................................................................................7

*United States v. Friedman*,
    532 F.2d 928 (3d Cir. 1976) .....................................................................................7

### RULES

Fed. R. Civ. P. 20(a) ................................................................................................4

Fed. R. Civ. P. 45 ....................................................................................................7

Local Rule 40.5 .......................................................................................................4

## INTRODUCTION

Nothing in Plaintiff's opposition brief undermines Time Warner Cable Inc.'s ("TWC") showing that Plaintiff's attorneys, Dunlap Grubb & Weaver ("Dunlap"), agreed to limit the scope of discovery sought from TWC, then issued multiple subpoenas each of which were in breach of the agreement and would impose significant burdens on TWC.

First, the email correspondence between TWC and Dunlap reflects an agreement to limit the burdens on TWC to no more than 28 IP addresses per month. The correspondence expressly stated that this cap included future subpoenas. The additional email correspondence that Plaintiff cites in its opposition brief does not alter that conclusion, and in fact it confirms that Dunlap promised to work with TWC before serving more subpoenas, then failed to do so. Plaintiff's attorney's statements at a minimum reflect its acknowledgement that 28 IP address lookups per month was a reasonable total that would prevent TWC incurring unreasonable costs and burdens. In light of this correspondence, Plaintiff cannot argue in good faith that its present subpoena demands are reasonable.

Second, Plaintiff does not rebut TWC's evidence that responding to the subpoena would impose significant burdens on TWC, and would compromise TWC's compliance with law enforcement requests. Instead, Plaintiff feebly argues that TWC's sworn affidavit should somehow be entitled to less weight because it is from the supervisor of the compliance team rather than a compliance team member. Plaintiff also argues that a different ISP responded to more IP address lookups, without explaining how that is relevant to the burdens on TWC. None of Plaintiff's arguments actually undermines TWC's evidence that Plaintiff's subpoena would in fact impose a significant burden on TWC.

Finally, Plaintiff resorts to inventing a theory of TWC's supposed "true intention" in filing its motion to quash. *See* Plaintiff's Opposition to Motion to Quash or Modify Subpoena Filed by Third Party Time Warner Cable Inc. [Dkt. 19] ("Plaintiff's Opp.") at 10. According to Plaintiff, TWC's decision to protect itself from excessive burdens by filing a motion to quash should be interpreted as encouraging unlawful copyright infringement. *Id*. at 11. Plaintiff's *ad hominem* allegation is not supported by any fact or law, and it is totally false. TWC does not support copyright infringement and its terms of service prohibit it. TWC has made no effort to publicize its motion. Plaintiff's accusations simply reflect its apparent desire that no one be permitted to object to its attorneys' strategy of filing massive litigation and then passing the costs and burdens onto a non-party such as TWC.

Because compliance with the subpoena would violate an agreement with Plaintiff's attorney and would impose significant burdens on TWC, this Court should quash the subpoena. In the alternative, the Court should modify the subpoena to protect TWC from undue burden.

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION FAILS TO CONTRADICT THE EXISTENCE OF AN AGREEMENT TO LIMIT DISCOVERY OF TWC

The documents that Plaintiff attached to its motion do not undermine the existence of an agreement between its attorneys and TWC to limit discovery to 28 IP address lookups per month. Plaintiff does not dispute that the email from TWC proposing 28 requests per month was captioned as a proposal for "Future Subpoenas." Plaintiff's Opp. Ex. 3 at 3. Plaintiff does not dispute that Dunlap's response was that the proposal "sounds reasonable" and expressly noted that "[w]e have just filed two more cases (larger ones)" to which its agreement applied. *Id*. at 2. Plaintiff argues that Dunlap later stated that it "may need to request more subpoenas," *id*. at 1, but nothing in that statement suggests that the previously-agreed cap of 28 IP address lookups

2

would not apply. Indeed, the only thing that the additional correspondence establishes is that Plaintiff's attorneys promised to work with TWC – "we will discuss this with you before we send it over" – then failed to do so. *Id.*[1]

Even if the Court concludes that the emails do not establish an express agreement, they certainly establish Dunlap's recognition that 28 IP lookups per month by TWC was a "reasonable" limit that will "keep[] your costs down and your volume manageable." Plaintiff's Opp. Ex. 3 at 2. Dunlap then proceeded to flood TWC with subpoenas totaling more than 1,400 IP address lookups. Plaintiff cannot in good faith maintain that the present subpoena is reasonable in light of its attorney's discussions with TWC as reflected in the emails.[2]

## II. PLAINTIFF HAS NO PERSUASIVE RESPONSE TO TWC'S UNCONTROVERTED EVIDENCE THAT COMPLIANCE WITH PLAINTIFF'S SUBPOENA WILL IMPOSE SIGNIFICANT BURDENS ON TWC

### A. Plaintiff's Unsupported Allegations Regarding TWC's Intentions Are False

Plaintiff alleges, with no support whatsoever, that TWC's reason for pointing out how much larger Dunlap's cases are than any comparable copyright litigation is to "garner public support" or suggest that it is "a good ISP for copyright infringers." Plaintiff's Opp. 11. That is nonsense and Plaintiff conspicuously provides no support for its accusation. TWC does not endorse copyright infringement. To the contrary, such activities would be a plain violation of

---

[1] Plaintiff challenges TWC's supposedly "questionable tactics" of filing three motions to quash in the same day, but that is because the issues are similar in each of the cases: Plaintiff's attorneys have filed a series of identical cases, with identical complaints, then served identical subpoenas on TWC. TWC thus filed a similar motions to quash in three cases – just as Dunlap filed identical oppositions to TWC's motions in each case – because the issues presented by each subpoena are similar.

[2] Plaintiff accuses TWC of not meeting and conferring in good faith. Plaintiff's Opp. 9. That is not true. TWC desired to reach a compromise, and filed its motions to quash only when it became apparent that Plaintiff would not honor its agreement and would not reduce the burdens on TWC to a reasonable level.

3

TWC's terms of service.[3]  Nor has TWC publicized its motion or sought to use this proceeding to "garner public support" for copyright infringement.  Plaintiff's argument indeed has no particular connection to TWC and would apply to any motion to quash filed by any ISP in any of these related copyright infringement cases.  In Plaintiff's view, any ISP that moves to quash one of its burdensome subpoenas "exposes itself to a claim for contributory copyright infringement."  Plaintiff's Opp. at 11.  No court has remotely endorsed Plaintiff's view of the law.

Plaintiff's rhetoric evades the central issue here, which is the burden on TWC, a non-party, to respond to this discovery.  TWC has simply pointed out that Plaintiff's lawyer's cases are dramatically larger than any comparable copyright litigation, and that Plaintiff's refusal to abide Rule 20's joinder rules has enabled it to serve highly burdensome requests on TWC in a single subpoena.  *See* TWC Memorandum in Support of Motion to Quash at 2-3, 10.  These arguments highlight that the burdens created by Plaintiff are far out of the norm and that Plaintiff cannot be surprised that TWC lacks available resources to respond to its massive discovery requests.  Plaintiff offers no response whatsoever to these common sense points.[4]

---

[3]  TWC's terms of service states that "Time Warner Cable's subscribers and account holders may not upload, post, transmit or otherwise make available on or via the Road Runner Service any material protected by copyright in a manner that infringes that copyright.  In accord with the Digital Millennium Copyright Act, it is the policy of Time Warner Cable to terminate in appropriate circumstances the Road Runner Service of any subscriber or account holder who is a repeat infringer.  However, as provided in the Time Warner Cable Subscriber Agreement, Time Warner Cable expressly reserves the right to terminate or suspend the service of any subscriber or account holder even for a single act of infringement."  *See* http://help.rr.com/HMSFaqs/e_copyrightcomp.aspx.

[4]  Plaintiff consistently fails to appreciate the distinction between Rule 20's joinder rules and this Court's rules regarding "related cases."  Rule 20 permits joinder of defendants only when relief is sought against them jointly or arises out of the same transaction <u>and</u> there is a question of law or fact common to all defendants.  Fed. R. Civ. P. 20(a)(2).  This Court's related case rule requires only that cases involve a common issue of fact.  Local Rule 40.5.  There is nothing inconsistent about arguing that Plaintiff should have informed this Court's clerk that it had filed related cases, but also that its apparent failure to comply with Rule 20 has resulted in a highly burdensome subpoena.

### B. The Court Should Quash the Subpoena Because Plaintiff Has Not Rebutted TWC's Evidence That Compliance Will Impose a Substantial Burden

Plaintiff makes several arguments why this Court should discount or ignore TWC's evidence that compliance with the subpoena will create substantial burdens. None of its arguments is persuasive.

Plaintiff first makes the frivolous claim that TWC's sworn affidavit is somehow flawed because it is from in-house counsel. Plaintiff's Opp. at 12. That argument merely reflects Plaintiff's displeasure at what the evidence shows. The Goldberg Affidavit establishes that TWC's subpoena compliance team is part of its Law Department. *See* TWC Motion, Ex. 2, ¶ 3. Thus, it is hardly surprising that the person with knowledge of its activities also is part of the Law Department. Mr. Goldberg is the attorney with most direct responsibility for the compliance team's activities. As Plaintiff is fully aware, Mr. Goldberg initially negotiated with its attorneys precisely because he has knowledge of the compliance team's capabilities. Far from being an improper affiant, Mr. Goldberg is the person best positioned to testify about TWC's compliance capabilities, and Plaintiff did not (and could not) show otherwise.

Next, Plaintiff questions the "detail" of TWC's evidence. Plaintiff's Opp. 12. But TWC explained precisely the number of IP address lookups it receives on average each month, detailed the law enforcement activities to which most of its efforts are directed, described TWC's decentralized structure that requires multiple steps to look up information corresponding to an IP address, and explained the burden that responding to Plaintiff's subpoena would place on the team. *See* TWC Motion Exhibit 2. And, as Plaintiff concedes, TWC provided it with a detailed cost study outlining the basis for its costs. Plaintiff's Opp. 14. Plaintiff does not dispute that responding to Plaintiff's subpoena would require TWC to redirect substantial resources away from compliance with law enforcement requests. TWC's evidence amply satisfies its burden to

demonstrate that, under the facts and circumstances of this case, compliance would be unduly burdensome. *See Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 173-74 (D.D.C. 1998).

Plaintiff mistakenly asserts that TWC actually has greater capabilities based on two flawed arguments. First, Plaintiff claims that TWC recently agreed to 45 IP address lookups per month. Plaintiff's Opp. 12. As part of an attempt to settle this discovery dispute, TWC did express a willingness to go from 28 to 45 IP address lookups per month for all of Dunlap's cases *combined*, but expressly stated that that number was a "compromise" that "will really tax [TWC's] compliance team" and "will impose a significant burden on TWC." *See* Exhibit 1 to this Reply. The fact that TWC offered to incur certain burdens as a compromise to settle this dispute in no way minimizes the actual burdens caused by Plaintiff's lawyer's subpoenas. In any event, 45 IP lookups per month is degrees of magnitude less than the more than 1400 IP lookups at issue in this motion and the identical related cases.

Second, Plaintiff argues that TWC provided information about 200 IP requests on a short time frame in two prior cases. Plaintiff's Opp. 12. That argument is disingenuous. TWC was able to resolve those requests quickly because most of Dunlap's requests mistakenly related to a *different ISP*'s subscribers or fell outside TWC's six-month retention window. Thus, TWC provided no information at all for most of those requests. TWC ultimately responded to only 37 IP lookups for those two subpoenas combined, and required 1 ½ months to do so – precisely consistent with its 28 IP address per month capabilities. If Plaintiff is representing that its current subpoena similarly includes numerous improper requests for information about a different ISP's subscribers, then it should promptly withdraw its subpoena.

Next, Plaintiff argues that a different ISP, Verizon, provided a greater number of IP address lookups at a lower cost. Plaintiff's Opp. 12. Plaintiff makes no attempt to show how

that could be relevant. The question before the Court is the burden on TWC, and all that Plaintiff has shown is that different companies may be differently situated. Plaintiff's argument in no way rebuts the uncontroverted evidence that compliance with its subpoena will impose substantial burdens on TWC.

### III. IF THE COURT DECLINES TO QUASH THE SUBPOENA, IT SHOULD IMPLEMENT LIMITATIONS THAT PROTECT TWC, INCLUDING REIMBURSEMENT OF COSTS

Plaintiff's arguments relating to the burdens of compliance amount to an argument that TWC is a big company that should just absorb the cost of responding to expansive third-party subpoenas. Plaintiff's Opp. 14-15. Plaintiff does not cite any case that has embraced that approach. To the contrary, the D.C. Circuit has squarely held that reimbursement of third-party costs under Rule 45 is appropriate even for federal government agencies, which obviously have vastly greater resources than TWC. *See Linder v. Calero-Portocarrero,* 251 F.3d 178, 182-83 (D.C. Cir. 2001); *see also United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368 (9th Cir. 1982) (large corporations are not excluded from reimbursement of third party compliance costs). Plaintiff also does not dispute that one of the central purposes of Rule 45 is to protect non-parties like TWC from incurring significant costs. Fed. R. Civ. P. 45 advisory committee's note (1991 amendments). Rule 45 reflects a "broad congressional judgment with respect to fairness in subpoena enforcement proceedings," *United States v. Friedman*, 532 F.2d 928, 937 (3rd Cir. 1976), and courts have frequently invoked Rule 45 to order reimbursement of costs to non-parties, including large companies. *See Columbia Broadcasting*, 666 F.2d at 368; *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 496 (E.D. Pa. 2005).

In addition, courts have repeatedly held that labor costs are appropriate for reimbursement. *See, e.g., In re Midlantic Corp. Shareholder Litig.*, Misc. No. 92-99, 1994 WL 750664 at *6 (D.D.C. Oct. 24, 1994) (ordering reimbursement of labor costs); *Celanese Corp. v.*

*E. I. du Pont de Nemours & Co.*, 58 F.R.D. 606, 611-612 (D. Del. 1973) (third party's costs of searching for documents is reimbursable); *Linder*, 180 F.R.D. at 177 (labor costs are reimbursable). Thus, Plaintiff's argument that some of TWC's costs relate to internal labor, *see* Plaintiff's Opp. 14, does not relieve Plaintiff of its obligation to reimburse TWC for the burdens it has imposed. The fact that TWC's employees otherwise would work on other activities, *see* Plaintiff's Opp. 14-15, confirms rather than rebuts TWC's claim that Plaintiff's subpoena imposes a significant burden.

Finally, Plaintiff objects to TWC's request that Plaintiff be required to limit any subpoenas to IP addresses that are identified in a complaint, and subject to a court order. Plaintiff claims that this problem is alleviated because it filed an amended complaint in this case, Plaintiff's Opp. 15-16, but that is wrong.[5] Plaintiff does not dispute that any amended complaint in this case post-dated this Court's order permitting discovery. *Id*. Plaintiff's mere filing of an amended complaint thus does not cure the problem. The point is that TWC will be protected from Plaintiff's highly burdensome discovery only through judicial management of discovery, which requires Plaintiff not only to file an amended complaint, but also then to obtain a judicial order permitting discovery in connection with that complaint. Otherwise, Plaintiff's attorneys will continue to serve subpoenas on TWC seeking hundreds or thousands of IP address lookups beyond what the Court may have contemplated when ordering discovery, and without any judicial oversight.

---

[5] Plaintiff does not dispute that in the related *G2* case, its attorneys improperly served discovery well beyond that permitted by court order. Plaintiff's Opp. at 16.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in TWC's opening memorandum, this Court should quash the subpoena issued to TWC. In the alternative, the Court should modify the subpoena as requested in TWC's motion to protect TWC from undue burdens.

Respectfully submitted,

Date: June 3, 2010

/s/ Alexander Maltas
Alexander Maltas
LATHAM & WATKINS LLP
555 11th St. NW
Suite 1000
Washington, DC 20004

*Counsel for Time Warner Cable Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2010, I served a copy of the foregoing Third Party Time Warner Cable Inc.'s Reply in Support of Motion to Quash or Modify Subpoena via first-class mail upon the following:

Thomas Mansfield Dunlap
Dunlap, Grubb & Weaver, PLLC
1200 G Street, NW
Suite 800
Washington, DC  20005

*Counsel for Plaintiff*

                                                /s/ Alexander Maltas
                                                Alexander Maltas