**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ACHTE/NEUNTE BOLL KINO BETEILIGUNGS GMBH & CO KG,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>DOES 1 - 4577,  )<br>  )<br>Defendants.  )<br>  ) | CA. No. 10-cv-453 (RMC) |
| WEST BAY ONE, INC.,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>DOES 1 - 1,653,  )<br>  )<br>Defendants.  )<br>  ) | CA. No. 10-cv-481 (RMC) |

**MEMORANDUM OF *AMICI CURIAE* IN RESPONSE TO PLAINTIFFS' STATEMENT OF GOOD CAUSE IN RESPONSE TO COURT ORDER REGARDING PERSONAL JURISDICTION**

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

MEMORANDUM OF *AMICI CURIAE* IN RESPONSE TO PLAINTIFFS' STATEMENT OF GOOD CAUSE IN RESPONSE TO COURT ORDER REGARDING PERSONAL JURISDICTION ............................................................................................................................. 1

I.  DISMISSAL PURSUANT TO THE ORDERS TO SHOW CAUSE IS APPROPRIATE AT THIS JUNCTURE. ................................................................................................................. 1

II. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION. .................................................................................................. 2

III. DELAY IN DETERMINING PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS WHO HAVE SOUGHT DISMISSAL IS UNWARRANTED AND COULD CAUSE HARM. ....................................................................................................................... 5

    A.  Delay in Dismissal of these Two Defendants is Unwarranted. ....................................... 5

    B.  Continuation of Litigation Where No Personal Jurisdiction Exists Harms These Defendants and Others. ..................................................................................................... 8

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Arista Records LLC v. Does 1-16,* 2009 WL 414060
(N.D.N.Y. February 18, 2009)........................................................................................................6

*Boron v. W. Tex. Exports, Inc.*, 680 F. Supp. 1532 (S.D. Fla. 1988)..............................................5

*Buchanan v. Manley*, 145 F.3d 386 (D.C. Cir. 1998)..................................................................1, 2

*Capital Bank Int'l. Ltd v. Citigroup, Inc.,* 276 F. Supp. 2d 72
(D.D.C. 2003) .................................................................................................................................2

*Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454 (D.C. Cir. 2001)....................................................2

*FC Inv. Group LC v. IFX Mkts., Ltd.,* 529 F.3d 1087
(D.C. Cir. 2008) ..............................................................................................................................6

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982).......................................................................................................................1

*Jackson v. Hayakawa,* 682 F.2d 1344 (9th Cir.1982)....................................................................7

*Knight v. Herriman,* 37 App.D.C. 236 (D.C. Cir. 1911) ...............................................................5

*London-Sire Records, Inc. v. Doe 1,* 542 F. Supp. 2d 153
(D. Mass 2008) ...............................................................................................................................6

*Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10 (D.D.C. 1996) ...............................................5

*Reuber v. United States,* 750 F.2d 1039 (D.C. Cir. 1985) ............................................................2

*Second Amendment Found. v. U.S. Conference of Mayors,*
274 F.3d 521 (D.C.Cir. 2001).........................................................................................................2

*Sony Music Entm't, Inc. v. Does 1-40,* 326 F. Supp. 2d 556
(S.D.N.Y. 2004)..............................................................................................................................6

*United States v. Philip Morris Inc.,* 116 F. Supp. 2d 116 (D.D.C. 2000).....................................3

*Williams v. Firstplus Home Loan Owner Trust 1998-4*, 310 F. Supp. 2d 981
(W.D. Tenn. 2004)..........................................................................................................................5

*World-Wide Volkswagon Corp v. Woodson,* 444 U.S. 286 (1980)................................................2

*Zhu v. Gonzales,* 2006 WL 1274767 (D.D.C. May 8, 2006) .....................................................2, 3

*Zwebner v. John Does Anonymous Found., Inc.*, 2001 WL 210173
(D. Ore. 2001).............................................................................................................................6, 7

**Other Authorities**

Anderson, Nate, *US Anti-P2P Law Firms Sue More in 2010 Than RIAA Ever Did,*
Ars Technica, Oct. 8, 2010 ..........................................................................................................9

Crossley, Andrew, *Which?hunt*, Law Society Gazette, April 9, 2010 ..........................................9

Sandoval, Greg, *'Hurt Locker' Sharers: Expect Docs Like This (photos)*,
CNET News, May 31, 2010 .......................................................................................................9

**MEMORANDUM OF *AMICI CURIAE* IN RESPONSE TO PLAINTIFFS' STATEMENT OF GOOD CAUSE IN RESPONSE TO COURT ORDER REGARDING PERSONAL JURISDICTION**

>The requirement that a court have personal jurisdiction ⋯ represents a restriction on judicial power ⋯ as a matter of individual liberty.

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

Pursuant to leave of court granted on October 4, 2010 *amici curiae* Electronic Frontier Foundation, American Civil Liberties Union and ACLU of the Nation's Capital, and Public Citizen file this memorandum to respond to the recent Statements of Good Cause by plaintiffs in both the *West Bay* and *Achte/Neunte* cases captioned above. [# 46 in *West Bay* and #110 in *Achte/Neunte*].[1] The Statements responded to this Court's Order of September 10, 2010, ordering plaintiffs to show cause why this case should not be dismissed against two defendants for lack of personal jurisdiction. [#38 in *West Bay* & #46 in *Achte/Neunte*]. The two defendants are William Wright, who is a defendant in both *West Bay* and *Achte/Neunte,* and Robert Ansell who is a defendant in *Achte/Neunte* only. Plaintiffs' Statements of Good Cause are substantively the same in both cases and will be referred to collectively as "SGC Brief" below.

**I.   DISMISSAL PURSUANT TO THE ORDERS TO SHOW CAUSE IS APPROPRIATE AT THIS JUNCTURE.**

If this Court determines that it does not have personal jurisdiction over Mr. Wright or Mr. Ansell, it should immediately dismiss them as defendants. The D.C. Circuit has held that *sua sponte* dismissal based on lack of personal jurisdiction before a claim has been served on the defendant is appropriate where, as here, the plaintiff has had an opportunity, through a show cause order, to demonstrate that the court has personal jurisdiction over the defendant. *Buchanan v. Manley*, 145 F.3d 386, 388 (D.C. Cir. 1998). If the plaintiff fails to demonstrate personal jurisdiction, then the dismissal is appropriate. *Id*. at 388-89. "This procedure gives [plaintiffs] notice of affirmative defenses and an opportunity to be heard [and] allows [defendants] to avoid the burden of appearing in a case that appears clearly to have been brought

---

[1] The Statement of Interest of *Amici* were included in their original *amicus* brief [*Achte/Neunte* #26 at 2-4]

1

in the wrong court" or that has no basis for personal jurisdiction. *Id*. at 389.

The Court gave plaintiffs ample opportunity to support their jurisdiction claim. As explained below, they have failed to do so and it is now obvious, as in *Buchanan,* that these cases appear "clearly to have been brought in the wrong court." *Id*. The Court should dismiss the cases as to Messrs. Wright and Ansell and relieve them of the burden of further improper litigation in this district.

## II. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION.

Here, as in every case, plaintiffs have the burden of establishing personal jurisdiction. *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1985). To meet this burden a plaintiff must show "a sufficient nexus between the specific tortious conduct alleged and the District for us to conclude that 'the defendant[s'] conduct and connection with the forum state are such that they should reasonably anticipate being haled into court there.'" *Id.* at 1050 *citing World-Wide Volkswagon Corp v. Woodson,* 444 U.S. 286, 297 (1980).

Plaintiffs admit that before discovery, in order to carry their burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendants they must demonstrate a prima facie showing that personal jurisdiction exists. SGC Brief, footnote 8 (citing several Second Circuit cases). In this District, this Court has recognized that: "the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." *Zhu v. Gonzales,* 2006 WL 1274767 (D.D.C. May 8, 2006), *citing Capital Bank Int'l. Ltd v. Citigroup, Inc.,* 276 F. Supp. 2d 72, 74 (D.D.C. 2003). Additionally, "[t]he plaintiff must allege specific acts connecting the defendant with the forum." *Id.*, *citing Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C.Cir. 2001). A plaintiff cannot merely make unsupported allegations or conclusory statements. *Id.* The court should resolve all factual discrepancies in the record in favor of the plaintiff, *id.* (citing *Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 2001)), but it need not treat all of the plaintiff's allegations as true, *id.* (citing *United States v. Philip Morris Inc.,* 116 F. Supp. 2d

2

116, 120 n. 4 (D.D.C. 2000)). Instead, the court " 'may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts.'" *Id.* (quoting *Philip Morris,* 116 F. Supp. 2d at 120 n. 4).

Plaintiffs have failed to allege specific facts connecting either Mr. Ansell or Mr. Wright -- or, indeed, any of the other 6,228 defendants -- to this forum. As the Court rightly noted in the Order to Show Cause, both Mr. Wright and Mr. Ansell have provided identifying information to plaintiffs and to the Court. Mr. Wright has shown that he resides in Oregon and Mr. Ansell has provided Verizon's own documentation that he resides in Pennsylvania. Plaintiffs have not offered a single additional fact to contradict that evidence. Thus the plaintiffs have failed to meet their burden in response to an Order to Show Case, and that failure should end the matter.

Unable to assert, much less prove, facts demonstrating that jurisdiction is appropriate, plaintiffs instead attempt to shift the burden of proof to the defendants. Plaintiffs assert that the defendants' statements that they live in Oregon and Pennsylvania respectively do not "conclusively establish that the court lacks personal jurisdiction over [them]." SGC Brief at 9. That is not the test at this juncture: As noted above, the burden is on the *plaintiffs* to come forth with "specific facts connecting the defendant to the forum." *Zhu,* 2006 WL 1274767 at *3 (citations omitted). Bare allegations and conclusory statements are insufficient. *Id.*

Instead of facts, plaintiffs offer unsupported speculation. They suggest that the defendants could have been "downloading or uploading plaintiffs' copyrighted work with another Doe defendant based in the District of Columbia" or that they may have "committed the infringing activities while visiting the jurisdiction." SGC Brief at 10. Such speculation can hardly suffice to meet plaintiffs' burden of alleging *facts*.[2] Indeed, plaintiffs did not even

---

[2] Plaintiffs made only these claims in their SGC Brief and so waived the additional assertions in support of personal jurisdiction made in their Complaints. Because of this waiver, *amici* will not address those claims separately again here, but those claims have already been addressed by *amici* in the amicus brief of June 2, 2010 [*Achte/Neunte* #26 at pages 5-10]. Specifically *amici* have already demonstrated that as a legal matter, plaintiffs are incorrect in asserting that the fact that the defendants' alleged activities took place on the Internet creates personal jurisdiction in every jurisdiction in the world, including in this District. Similarly, *amici* have noted that that several courts have already rejected plaintiffs' argument that personal

3

attempt to couch these statements as factual assertions. Instead they mention them merely as "examples" of how they might have a "good faith argument to assert personal jurisdiction." SGC Brief at 10.

Moreover, plaintiffs' suppositions are also extremely far-fetched. As this Court is now well aware, the software that plaintiffs allege the defendants used is a widely distributed peer-to-peer technology that is used by millions of people in the United States and around the world.[3] The likelihood that either defendant uploaded or downloaded the single copyrighted work at issue in each case from a person located in the District on the precise date and time specified is exceedingly small. Similarly, the chances are even smaller that Mr. Wright or Mr. Ansell (1) was visiting the District at the exact moment plaintiffs were doing their investigation, and (2) that it was while each was visiting that he downloaded or uploaded this single copyrighted work, and (3) that each of them used what *amici* believe would have to be sophisticated and unusual technical measures to connect through their home IP address rather than through the IP address of the hotel or other location where he was in the District.

Given the extremely remote chance that either of these two scenarios occurred here, it is not surprising that plaintiffs offered these as hypothetical "examples." No matter how artfully presented, however, unlikely imaginary scenarios are not factual allegations, and they do not serve to meet plaintiffs' burden to present a prima facie basis for the Court to exercise personal jurisdiction over Mr. Wright or Mr. Ansell.

---

jurisdiction over defendants can be based solely on having an ISP that itself may have some contacts within the District. The June 2 amicus brief, as well as the Declaration of Seth Schoen filed therewith, also demonstrates how plaintiffs could have sued each defendant in his or her proper jurisdiction, or at least been able to assert some factual basis for the jurisdiction in response to a motion to dismiss, based on the IP addresses they collected as part of their investigations. [*Achte/Neunte* #26 and #23-2]. While *amici* believe that plaintiffs have waived these arguments, and that the arguments fail on their own merits, if the Court wishes additional briefing on these issues, *amici* are prepared to provide it.

[3] Plaintiffs' counsel readily admit this fact. In the Declaration of USCG manager Benjamin Perino supporting plaintiffs' Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference in *Achte/Neunte*, Mr. Perino states: "[a]t any given moment and depending upon the particular P2P network involved, anywhere from thousands to millions of people either across the country or around the world, unlawfully use the P2P network." [*Achte/Neunte* #4-1, para. 6].

attempt to couch these statements as factual assertions. Instead they mention them merely as "examples" of how they might have a "good faith argument to assert personal jurisdiction." SGC Brief at 10.

Moreover, plaintiffs' suppositions are also extremely far-fetched. As this Court is now well aware, the software that plaintiffs allege the defendants used is a widely distributed peer-to-peer technology that is used by millions of people in the United States and around the world.[3] The likelihood that either defendant uploaded or downloaded the single copyrighted work at issue in each case from a person located in the District on the precise date and time specified is exceedingly small. Similarly, the chances are even smaller that Mr. Wright or Mr. Ansell (1) was visiting the District at the exact moment plaintiffs were doing their investigation, and (2) that it was while each was visiting that he downloaded or uploaded this single copyrighted work, and (3) that each of them used what *amici* believe would have to be sophisticated and unusual technical measures to connect through their home IP address rather than through the IP address of the hotel or other location where he was in the District.

Given the extremely remote chance that either of these two scenarios occurred here, it is not surprising that plaintiffs offered these as hypothetical "examples." No matter how artfully presented, however, unlikely imaginary scenarios are not factual allegations, and they do not serve to meet plaintiffs' burden to present a prima facie basis for the Court to exercise personal jurisdiction over Mr. Wright or Mr. Ansell.

---

jurisdiction over defendants can be based solely on having an ISP that itself may have some contacts within the District. The June 2 amicus brief, as well as the Declaration of Seth Schoen filed therewith, also demonstrates how plaintiffs could have sued each defendant in his or her proper jurisdiction, or at least been able to assert some factual basis for the jurisdiction in response to a motion to dismiss, based on the IP addresses they collected as part of their investigations. [*Achte/Neunte* #26 and #23-2]. While *amici* believe that plaintiffs have waived these arguments, and that the arguments fail on their own merits, if the Court wishes additional briefing on these issues, *amici* are prepared to provide it.

[3] Plaintiffs' counsel readily admit this fact. In the Declaration of USCG manager Benjamin Perino supporting plaintiffs' Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference in *Achte/Neunte*, Mr. Perino states: "[a]t any given moment and depending upon the particular P2P network involved, anywhere from thousands to millions of people either across the country or around the world, unlawfully use the P2P network." [*Achte/Neunte* #4-1, para. 6].

III. **DELAY IN DETERMINING PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS WHO HAVE SOUGHT DISMISSAL IS UNWARRANTED AND COULD CAUSE HARM.**

    A.    <u>**Delay in Dismissal of these Two Defendants is Unwarranted.**</u>

Hoping to distract the Court from their inability to offer factual allegations, much less evidence, of personal jurisdiction, plaintiffs argue that this Court should refuse to consider whether jurisdiction is proper over Mr. Wright and Mr. Ansell at this time, and instead should wait until after they have finished conducting its identity-seeking discovery against all 6,230 individuals they have named in these two lawsuits because this would be "practical." SGC Brief at 7 and 8. This argument is unfounded and unfair.[4]

Where a plaintiff has not alleged any basis for personal jurisdiction, the court must dismiss the claim and "need not address other possible deficiencies" in the complaint. *Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10, 13 (D.D.C. 1996). In *Meyer*, for example, the court promptly dismissed the claims against an individual defendant while allowing claims against another defendant to progress. *Id.* at 14. *Accord Williams v. Firstplus Home Loan Owner Trust 1998-4*, 310 F. Supp. 2d 981, 995-96 (W.D. Tenn. 2004)(In light of response to order to show case, court dismissed claim against one defendant for lack of prima facie showing of personal jurisdiction while allowing claim against another defendant to progress); *Boron v. W. Tex. Exports, Inc.*, 680 F. Supp. 1532, 1537-38 (S.D. Fla. 1988) (same). Here, the question whether personal jurisdiction exists over Mr. Wright and Mr. Ansell is in no way dependent on the identities of the 6,228 other individuals who have been joined into these two lawsuits with them, so there is no basis for delay even though there may also be jurisdictional or other defects in the claims brought against the other defendants.

---

[4] As the Court is well aware, *amici* believe that the joinder of all of these unrelated individuals into a single suit is improper. We recognize that the Court did not accept this misjoinder argument when it was raised by *amici* in June [*Achte/Neunte* #26 at 10-13] but we do urge the Court to reconsider at this juncture, which it can do *sua sponte*. *See e.g. Knight v. Herriman,* 37 App.D.C. 236 (D.C. Cir. 1911). Requests such as this one to delay dismissing an individual from the case until discovery is completed against thousands of others, and the resulting hardship to the various defendants, grow directly out of plaintiffs' strategic decision to sue so many unrelated people in the same lawsuit.

5

Even if plaintiffs had sought only to have this Court wait until their discovery regarding Mr. Wright and Mr. Ansell was completed, further delay would not be justified. In order to engage in jurisdictional discovery, the plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant. Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation." *FC Inv. Group LC v. IFX Mkts., Ltd.,* 529 F.3d 1087, 1093-4 (D.C. Cir. 2008)(citations omitted). In *FC Inv. Group,* the D.C. Circuit upheld a district court's denial of jurisdictional discovery when the defendant company had presented evidence that it had only one client in the District and plaintiff argued that discovery could allow determination of how many transactions the client had conducted and their value, and whether any customers who resided in Virginia or Maryland "had accessed the website while at work in the District." *Id.* Plaintiffs' arguments here, offering similar speculations that these defendants may have been temporarily in the District while engaging in these behaviors or conducted these specific transactions with someone in the District, are equally insufficient to support additional jurisdictional discovery.

The difference between this case and the cases upon which plaintiffs rely is obvious. In *Sony Music, London-Sire* and *Arista*,[5] the defendants' identities were not known at the time the motions to dismiss were filed; here, the defendants' identities are known. For instance, in *Sony Music* the court rejected an argument that a motion to quash on personal jurisdiction could be granted *in the absence of identifying information for the defendant. Sony,* 326 F. Supp. 2d at 567 (emphasis added). The pre-identification cases are simply inapposite.

Another (unreported) case on which plaintiffs cite, *Zwebner v. John Does Anonymous Found., Inc.*, 2001 WL 210173 (D. Ore. 2001), actually supports the defendants. In that case, a person named French identified himself as the person named as John Doe in the Complaint and filed an answer even before being formally named and served by the plaintiff. The plaintiff

---

[5] *Sony Music Entm't, Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 567-568 (S.D.N.Y. 2004); *London-Sire Records, Inc. v. Doe 1,* 542 F. Supp. 2d 153, 180-181 (D. Mass 2008) ); *Arista Records LLC v. Does 1-16,* 2009 WL 414060 *7 (N.D.N.Y. February 18, 2009).

moved to strike the answer as premature and the Court denied the motion, observing: "Plaintiff acknowledges that a defendant in an action may make a voluntary appearance without having been served with the summons and complaint." *Zwebner* at *2 (*citing Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982)).

Plaintiffs here try to distinguish *Zwebner* by noting that the defendant in that case admitted to certain underlying facts, while Messrs. Wright and Ansell have not admitted "any infringing activity." Plaintiffs' suggestion that a defendant must admit liability before being allowed to seek dismissal for lack of personal jurisdiction before being served is absurd. Defendants *have* admitted that they are the John Does named via their IP addresses and that is sufficient to allow them to make a voluntary appearance for purposes of dismissal for lack of personal jurisdiction.

Next, plaintiffs assert that additional discovery under this Court's provenance is necessary to allow them to verify the IP addresses and residential addresses and Media Access Control (MAC) addresses from the various ISPs they have subpoenaed. SGC Brief at 7-9. Nonsense. The stated purpose for the subpoenas was to identify the unnamed defendants and that purpose has been fulfilled. Mr. Wright and Mr. Ansell have already received "verification" of their IP addresses from their ISPs directly: Verizon for Mr. Ansell and Charter Communications for Mr. Wright. Indeed, that information led, in part, to their appearance before this Court. There is no reason to believe that the ISPs will give different information in response to the subpoena than they have already given to their own customers. And of course both Mr. Ansell and Mr. Wright separately provided their addresses to this Court, and Mr. Ansell even provided Verizon's letter to him verifying Verizon's records of his residential address. [*Achte/Neunte* #15, at 6]. Further "verification" via IP address, residential address or MAC address would be redundant at best, and is hardly a sufficient basis to force these defendants to continue to labor under the burden of a lawsuit.

7

### B. Continuation of Litigation Where No Personal Jurisdiction Exists Harms These Defendants and Others.

Contrary to plaintiffs' intimations, the burden of delay is substantial. Waiting to dismiss anyone from these cases for lack of personal jurisdiction until all 6,230 individuals are identified in these two cases is not only manifestly unfair, it is likely to harm a significant number of defendants. If any defendant is seeking a job, a mortgage, a student or other loan, or applying for membership in the bar or any other professional organization, the fact that he or she is a defendant in pending litigation could cause an adverse impact. Moreover, it is likely that at least some of those affected are in a profession, such as law enforcement, where an outstanding accusation of potentially criminal activity such as copyright infringement could cause significant hardship and embarrassment even if they are later exonerated. Defendants in these cases deserve to have dispositive issues like personal jurisdiction decided promptly and they should not be forced to have litigation hanging over them until such time as the plaintiff decides it wishes to move forward or because of the "practical" claims of a plaintiff that has chosen to sue thousands of individuals together in the same case.

Plaintiffs assert that the Does who have not yet been identified by their real names in an amended complaint and formally served with the summons and complaint are not yet parties to these actions and therefore have no standing to seek dismissal and no grounds for unhappiness at not being dismissed – because perhaps they never will be named as defendants. SCG Brief at 3-6. This is sophistry. Defendants Wright and Ansell are parties, as are all of the Does; they have just been named by their IP addresses. A rose by any other name is still a rose. If Mr. Wright or Mr. Ansell, or any other Doe defendant, were asked whether he is a party to pending litigation, the only truthful answer would be "yes."

Delay in determining personal jurisdiction would have a broader effect as well, in that it would effectively support the continuation of what *amici* believe is an unfair copyright litigation business model. Even though it now appears clear that they are the only entity in this litigation actually located in the District, plaintiffs' counsel have continued filing virtually identical lawsuits here over the past few months notwithstanding the jurisdictional and other questions

8

arising that loom in these and other pending cases. They appear to have continued demanding and receiving payments from those sued to settle the case without need for a formal appearance in this District.[6] Further delay will allow plaintiffs' counsel to continue to use the fact of pending litigation in the District, which is likely *not* the appropriate jurisdiction for the vast majority of the now approximately 16,000 people their clients have sued, to pressure settlement payments out of those targeted *before* the lack of personal jurisdiction in this District is revealed.[7] A prompt decision here could help inform defendants of the jurisdictional problems in the lawsuits, which means they will be less likely to settle the case based on a misunderstanding of whether they can be legally haled into court here.

  *Amici*'s concerns are born out by the record. As far as *amici* are aware, no cases have been filed *outside* this District despite the fact that significant numbers of true names and addresses of Doe defendants have been turned over to plaintiffs in these cases and the other cases pending in this District. Indeed, plaintiffs' counsel have stated that they may not even intend to file litigation in the proper jurisdiction if it turns out jurisdiction is improper in the District. In Opposition to the Motion to Dismiss of several other defendants in *West Bay* case, plaintiffs' counsel notes: "[E]ven if Plaintiff obtains identifying information from an ISP linking a

---

[6] While the plaintiffs' attorneys here have not revealed the amount of money they have received so far in settlements or what percentage of those who receive a settlement demand letter actually settle, information is available from attorneys in the U.K. are engaging in a similar litigation business model and using either the same or a related "investigation" firm as the Guardeley firm used by plaintiffs' counsel here. The "sole principal" for the U.K. law firm engaging in the copyright litigation business boasted in April, 2010, that in eleven months they have generated over a million dollars in settlement payments. Andrew Crossley, *Which?hunt*, Law Society Gazette, April 9, 2010, available at http://www.lawgazette.co.uk/opinion/letters/which-hunt. This boast has largely been confirmed by independent analysis of the emails of Mr. Crossley's law firm, ACS Law, which indicate that approximately one-third of those threatened settle relatively quickly. *Leaked Emails Reveal Profits of Anti-Piracy Cash Scheme,* TorrentFreak.com September 26, 2010, http://torrentfreak.com/leaked-emails-reveal-profits-of-anti-piracy-cash-scheme-100926/; *see also* Nate Anderson, *The 'Legal Blackmail Business: Inside a P2P Settlement Factory*, Ars Technica.com, October 30, 2010, http://arstechnica.com/tech-policy/news/2010/09/amounts-to-blackmail-inside-a-p2p-settlement-letter-factory.ars.

[7] The estimate of 16,000 sued comes from a news source that has been tracking this litigation. Nate Anderson, *US Anti-P2P Law Firms Sue More in 2010 Than RIAA Ever Did*, Ars Technica, Oct. 8, 2010, http://arstechnica.com/tech-policy/news/2010/10/us-anti-p2p-law-firms-sue-more-in-2010-than-riaa-ever-did.ars.

9

particular Doe defendant to an alleged infringement, it is still within Plaintiff's discretion to name or not name that person as a defendant." [*West Bay* #45, page 4]. *Amici* fear that plaintiffs' counsel's strategy is to use the leverage of filing in a remote location to squeeze quick settlements out of unsuspecting defendants, but then avoid the cost and burden of actually litigating in the appropriate jurisdiction against those who do not fold quickly by simply not refiling once they get the information confirming where the case should have properly been brought.

If so, that strategy is supported by efforts to delay consideration of dispositive issues such as personal jurisdiction. Put simply, additional delay encourages plaintiffs' counsel to continue to bring and maintain their improperly-filed lawsuits in the District and to issue demand letters to defendants that trade upon the specter of litigation in a far away court as part of the leverage to shake out cash settlements.[8] This Court should not support or countenance this practice.[9]

Given this ongoing burden on defendants, and the incentive for plaintiffs to keep that burden hanging over these defendants and thousands of others for as long as possible in order to encourage settlements, plaintiffs' assertions of "practicality" should be viewed skeptically; instead this Court should promptly dismiss defendants from these cases where personal jurisdiction is lacking.

---

[8] A news article included posting of a copy of the post-litigation letter sent by the plaintiff in the *Achte/Neunte* case as of May, 2010, threatening damages of up to $150,000 per work and offering to settle the case for a sum of $1,500 if payment is made within a month and $2,500 if payment is made within two months. Greg Sandoval, *'Hurt Locker' Sharers: Expect Docs Like This (photos)*, CNET News, May 31, 2010, http://news.cnet.com/2300-1023_3-10003610.html. The demand letter is available at:
 http://news.cnet.com/2300-1023_3-10003610-6.html (page 1),
http://news.cnet.com/2300-1023_3-10003610-7.html (page 2),
http://news.cnet.com/2300-1023_3-10003610-8.html (page 3).
*Amici* are aware of the same letter being sent elsewhere.

[9] Plaintiffs counsel are not the only lawyers who have embraced this new sort of copyright litigation business model aimed at ordinary people with few resources. Other firms have been bringing similar mass copyright litigation in Las Vegas, Nevada and elsewhere. *Amicus* EFF estimates that in total more than 26,200 individuals have been sued in similar consequences in the U.S. in the past year.

**CONCLUSION**

For these reasons Mr. Wright and Mr. Ansell should be dismissed from these cases.

Dated: October 15, 2010

Respectfully submitted,

*s/Corynne McSherry*
Corynne McSherry (*pro hac vice*)
*corynne@eff.org*
Cindy Cohn
*cindy@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
T: (415) 436-9333
www.eff.org

Attorney for *Amicus*
ELECTRONIC FRONTIER FOUNDATION

*s/Marcia Hofmann*
Marcia Hofmann (D.C. Bar No. 484136)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
T: (415) 436-9333
www.eff.org

Attorney for *Amicus*
ELECTRONIC FRONTIER FOUNDATION

Paul Alan Levy
*pleavy@citizen.org*
PUBLIC CITIZEN LITIGATION GROUP
1600 - 20th Street, N.W.
Washington, D.C. 20009
T: (202) 588-1000
http://www.citizen.org/litigation

Attorney for *Amicus*:
PUBLIC CITIZEN

Arthur B. Spitzer (D.C. Bar. No. 235960)
*artspitzer@aol.com*
AMERICAN CIVIL LIBERTIES UNION OF
THE NATION'S CAPITAL
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
T. 202-457-0800
www.aclu-nca.org

Attorney for *Amicus*:
AMERICAN CIVIL LIBERTIES UNION OF
THE NATION'S CAPITAL

Aden J. Fine (D.C. Bar No. 485703)
*afine@aclu.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2500
www.aclu.org

Attorney for *Amicus*:
AMERICAN CIVIL LIBERTIES UNION